# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANGEL VAZQUEZ,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2015

No. 320175
Ingham Circuit Court
LC No. 13-000088-FC

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of five counts of first-degree criminal sexual conduct, MCL 750.520b(1)(f)(*ii*) (personal injury with force or coercion), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(f) (personal injury with force or coercion).[1] Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 225 to 360 months for two counts of first-degree criminal sexual conduct, 168 to 360 months for three counts of first-degree criminal sexual conduct, and 60 to 270 months for second-degree criminal sexual conduct. We affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the presentence investigation report (PSIR) and judgment of sentence.

## I. FACTUAL BACKGROUND

The victim was 12 years old when she met defendant, a neighbor who was approximately 50 years old. She and her sister would clean his house, and he would pay them $20 for doing so. The victim testified that defendant would buy her gifts, such as food, underwear, clothes, and an iPod.

---

[1] Although defendant asserts there is confusion in the number of first-degree criminal sexual conduct convictions, the jury was charged with five counts of first-degree criminal sexual conduct, and found defendant guilty of all five counts. The judgment of sentence and the verdict form properly reflect these convictions.

The sexual assaults began when the victim was approximately 13 years old. She testified that defendant touched her breasts, digitally penetrated her vagina, and penetrated her vagina with his penis. She knew what defendant was doing was wrong, she told him to stop, and that it hurt. However, the victim continued to visit defendant's house daily because she was afraid of him. She testified that defendant engaged in sexual conduct with her almost daily, including anal-penile penetration and oral penetration.[2]

Eventually, when the victim approached the age of 16, she became less fearful of defendant. By the time she was 17 years old, she stopped engaging in sexual activity with defendant. She testified that the last sexual contact occurred when he touched her breast, she told him no, she ran to the bathroom, and called the police shortly thereafter.

The victim detailed the turmoil these sexual assaults created in her life. After the first assault, the victim attempted to commit suicide. The victim's mother tried to get her mental health help through hospitalization and medication. The victim's sister also explained how the victim underwent a drastic change in behavior when she was around 13 or 14 years old. Despite her family's efforts, the victim again attempted suicide when she was 16 years old.

The victim also explained that she failed eighth grade even though she previously had been a good student. The victim's mother verified that her plummeting grades and suicide attempts occurred when the victim was visiting defendant frequently. The victim also testified that defendant's conduct affected her because did not think positively about herself. She explained that after the assaults, she "didn't want to feel."

Defendant confirmed that the victim would often visit his trailer, and he gave her a key so she could look after the trailer when he was out of town. He admitted that he had sexual intercourse with her when she was 17, but denied having sex with her when she was younger than 16 years old. A jury convicted defendant of five counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. He now appeals on several grounds.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant first contends that the evidence was insufficient to prove he caused personal injury to the victim, a requirement for all of his convictions. We review *de novo* a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks and citations omitted). We resolve conflicts of the evidence in favor of the prosecution,

---

[2] Evidence also was introduced that defendant inappropriately touched the victim's sister.

"and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). We also note that circumstantial evidence and reasonable inferences arising therefrom can constitute sufficient proof of the elements of a crime. *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

## B. ANALYSIS

Pursuant to MCL 750.520b(f), first-degree criminal sexual conduct occurs when "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration." Pursuant to MCL 750.520c(f), second-degree criminal sexual conduct occurs when "[t]he actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact."

Personal injury, in turn, is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). Mental anguish takes the form of "evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind." *People v Petrella*, 424 Mich 221, 259; 380 NW2d 11 (1985). Relevant factors include: evidence that the victim was upset or crying during or after the assault; that the victim needed to seek psychiatric or psychological care or treatment; a resulting interference with the victim's ability to conduct a normal life; the victim's fear for her life or safety, or that of those near to her; feelings of anger and humiliation; evidence that the victim was prescribed some sort of medication to treat her anxiety or other symptoms; and evidence that the emotional or psychological effects of the assault were long-lasting. *Id.* at 270-271.

Here, there was significant evidence of the victim's mental anguish. She had to seek mental health treatment, her normal life was severely disrupted as she failed the eighth grade, she allowed the conduct to continue out of fear that he would harm her, she was unable to think positively about herself and experienced weight gain, and she twice attempted to take her own life. This is significant evidence of acute mental anguish. Further, regarding the last incident where defendant touched the victim's breast, the victim explained that she was pregnant at the time. Defendant began touching her breast when she was sleeping in the middle of the night. Even though she told him no, he continued to assault her. She eventually pushed away and fled. She was so distraught that after running from defendant, she hid in the bathroom, and called the police the next day.

In light of the foregoing, there was sufficient evidence that the victim suffered from mental anguish. Defendant, however, posits that there was insufficient evidence that he caused the victim's mental distress. He incredibly suggests, for example, that her distress could have been due to the loss of her grandmother or because she was living in poverty. Yet, the victim testified that upon reflection, it was fair to say that defendant's conduct was the source of her mental distress. Although defendant offers a different theory, it was for the trier of fact to consider the victim's credibility, and we defer to such determinations. *Unger*, 278 Mich App at 222. Moreover, "the statute does not require that defendant be the sole cause of the victim's injury." *People v Brown*, 197 Mich App 448, 452; 495 NW2d 812 (1992). There was sufficient evidence that defendant caused the victim personal injury.

-3-

## III.  JURY INSTRUCTIONS

## A.  STANDARD OF REVIEW

Defendant next contends that the court improperly instructed the jury.  Because defendant did not object to jury instructions before deliberations, our review is for plain error affecting substantial rights.  *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).

## B.  LEGAL STANDARDS

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense."  *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).  Thus, a defendant is entitled to have all the elements of the crime submitted to the jury.  *Id.*  However, "[i]nstructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  *Id.* (emphasis in original) (quotation marks and citation omitted).  Thus, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights."  *Id.* at 501-502.  Where the "evidence related to the missing element was overwhelming and uncontested, it cannot be said that the error affected the defendant's substantial rights or otherwise undermined the outcome of the proceedings."  *Id.* at 506.  See also *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

We also note that "[i]nstructional errors are presumed to be harmless, MCL 769.26, but the presumption may be rebutted by a showing that the error resulted in a miscarriage of justice."  *People v Dupree*, 284 Mich App 89, 117; 771 NW2d 470 (2009).  See also *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002) ("The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative.").

## C.  WAIVER

Of initial significance is that defendant has waived any challenge to the jury instructions.  When the trial court specifically asked defense counsel if there were any objections to the jury instructions, defense counsel replied in the negative.  As the Michigan Supreme Court has held, when defense counsel approves of the jury instructions by communicating that he has no objections, "defendant waived any objection to the erroneous instructions, and there is no error to review."  *Kowalski*, 489 Mich at 504.  See also *People v Hershey*, 303 Mich App 330, 351; 844 NW2d 127 (2013) ("a response on the record by a defendant of 'no objection' to a court's inquiry regarding the propriety of the instructions it has read to a jury is, when viewed in its context, indicative of a manifestation of approval of the instructions.").

Further, even if we were to review this issue, defendant has not demonstrated that he is entitled to relief.

## D.  FIRST-DEGREE CRIMINAL SEXUAL CONDUCT

Defendant contends that the trial court erred in failing to instruct the jury on the defense of consent with respect to the first-degree criminal sexual conduct charges. "[B]ased on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). However, a trial court is not required to give an instruction on a defense theory unless requested. *People v Richardson*, 490 Mich 115, 121; 803 NW2d 302 (2011). Moreover, "[w]hen a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Riddle*, 467 Mich at 124.

Defendant has not demonstrated that he requested an instruction regarding a consent defense for the first-degree criminal sexual conduct charges. See *Richardson*, 490 Mich at 121 (the trial court is not required to give an instruction on a defense theory unless requested). In fact, since the consent instruction was given for the second-degree criminal sexual conduct charge, it appears that any omission on the part of defendant was intentional.

Furthermore, such an instruction was not warranted. "There is no issue of consent in a statutory rape charge because a victim below the age of consent is conclusively presumed to be legally incapable of giving his or her consent to sexual intercourse." *People v Armstrong*, 490 Mich 281, 292 n 14; 806 NW2d 676 (2011) (brackets, quotation marks, and citation omitted). The victim testified about multiple incidents of first-degree criminal sexual conduct beginning when she was 13 years old. Consent is not a defense for sexual conduct occurring when the victim is below the age of consent. *Armstrong*, 490 Mich at 292 n 14; *People v Wilkens*, 475 Mich 899, 900; 716 NW2d 268 (2006).

Moreover, even if such an instruction was available, defendant denied that any sexual conduct occurred before the victim was 17 years old. In other words, rather than presenting evidence of consent for these first-degree criminal sexual conduct incidents, defendant completely denied their occurrence. See *Riddle*, 467 Mich at 124 (a trial court only is obliged to give an instruction on a defense theory when the evidence supports it). Defendant has not demonstrated that a consent instruction was warranted.

## E. SECOND-DEGREE CRIMINAL SEXUAL CONDUCT

Defendant next contends that the instruction for second-degree criminal sexual conduct was fatally flawed because it omitted the element of personal injury. See MCL 750.520a(n) (defining "personal injury" as "bodily injury" or "mental anguish."); see *Petrella*, 424 Mich at 259 (defining "mental anguish" as occurring when the victim "experienced extreme or excruciating pain, distress, or suffering of the mind."). Defendant is correct that the court did not instruct the jury on the element of personal injury. Moreover, even if defendant could establish plain error occurred, we find that the record is replete with evidence showing personal injury to the victim as a result of defendant's actions.

Even so, in its preliminary instructions, the trial court properly instructed the jury regarding the personal injury element of second-degree criminal sexual conduct. Moreover, even if defendant has established plain error affecting substantial rights, courts still " 'must exercise' .

-5-

. . 'discretion' and only grant defendant a new trial if the 'error resulted in the conviction of an actually innocent defendant' or 'seriously affected the fairness, integrity, or public reputation of judicial proceeding'." *People v Vaughn*, 491 Mich 642, 666; 821 NW2d 288 (2012), quoting *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The evidence establishes that the victim suffered prolonged mental anguish. The sexual assaults affected her education and feelings of self-worth. She also struggled with depression and attempted to commit suicide multiple times. Even during the last incident, when the victim was older and when defendant touched her breast, her mental anguish is discernible. She was so distraught that she pushed defendant away, ran, hid in the bathroom, and eventually called the police.

The evidence at trial demonstrates that the mental anguish the victim suffered, as a result of defendant's actions toward her, was ongoing and had profound, lasting effects in her life. Therefore, we do not find that the imperfect jury instruction undermined the fairness, integrity, or public reputation of the court proceedings. *Vaughn*, 491 Mich at 666.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Defendant also asserts ineffective assistance of counsel because of defense counsel's failure to object to the inadequacy of the jury instructions. Whether a defendant received effective assistance of counsel is a mixed question of fact and law, as a "trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). When reviewing a claim of ineffective assistance of counsel that has not been preserved for appellate review, a reviewing court is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

### B. ANALYSIS

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). To establish a claim for ineffective assistance of counsel, a defendant first must establish that "counsel's representation fell below an objective standard of reasonableness." *Vaughn*, 491 Mich at 669 (quotation marks and citation omitted); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must show that trial counsel's deficient performance prejudiced his defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 669 (quotation marks and citation omitted); see also *Strickland*, 466 US at 687.

Even if defense counsel behaved in an objectively unreasonable manner regarding the jury instructions, defendant has not established that the outcome of the proceeding would have been different. As discussed *supra*, there was significant evidence of defendant's guilt. The victim testified that defendant began sexually assaulting her when she was about 13 years old, and continued to do so until she was 17 years old. These assaults occurred on a daily basis. The

havoc this created in the victim's life is observable in the dramatic drop in her school performance, her feelings of depression and low self-worth, and her multiple suicide attempts. Her sister verified that the victim underwent a major behavioral change, and the victim's mother confirmed that the change occurred when the victim was spending time with defendant. Moreover, defendant actually admitted that he had sexual intercourse with the victim, although he claimed it occurred later, when he was approximately 55 years old and the victim was 17 years old.

In light of the significant evidence of defendant's guilt, it cannot be said that any defense counsel error affected the outcome of the proceedings. *Vaughn*, 491 Mich at 669.

## V. SENTENCING

### A. STANDARD OF REVIEW

Lastly, defendant challenges the court's judicial fact-finding during sentencing and the accuracy of the PSIR and judgment of sentence. "We review de novo questions of constitutional law." *People v Harper*, 479 Mich 599, 610; 739 NW2d 523 (2007). "The trial court's response to a claim of inaccuracies in the presentence investigation report is reviewed for an abuse of discretion." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). However, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 764-765.

### B. ANALYSIS

Defendant first contends that the sentencing court engaged in improper judicial fact-finding when scoring offense variables. Defendant argues that this was in violation of *Alleyne v United States*, __ US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013). However, as defendant concedes, we have rejected this argument.

In *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), we held that "judicial fact-finding to score Michigan's sentencing guidelines falls within the wide discretion accorded a sentencing court in the sources and types of evidence used to assist the court in determining the kind and extent of punishment to be imposed within limits fixed by law." (Quotation marks and citation omitted). This Court concluded, "Michigan's sentencing guidelines are within the broad sentencing discretion, informed by judicial factfinding, that does not violate the Sixth Amendment." *Id.* Thus, defendant's argument has been foreclosed by *Herron*.[3]

---

[3] An appeal in *Herron* was held in abeyance pending the Michigan Supreme Court's decision in *People v Lockridge*, 496 Mich 852; 846 NW2d 925 (2014). See *People v Herron*, __ Mich __; 846 NW2d 924 (2014). However, "[t]he filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C).

Defendant also contends the PSIR and judgment of sentence incorrectly indicate that his convictions were predicated on the victim being under 13 years of age. Plaintiff concedes that both documents need to be amended. Thus, we remand for the ministerial act of correcting these errors.

## VI. CONCLUSION

Defendant's convictions were supported with sufficient evidence. There are no jury instructional errors, nor related claims of ineffective assistance of counsel, that warrant reversal or remand. Defendant is not entitled to resentencing, although we remand for the ministerial task of correcting his PSIR and judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan