# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 5, 2016

Plaintiff-Appellee,

v

No. 324018
Wayne Circuit Court

THEODORE PAUL WAFER,

LC No. 14-000152-FC

Defendant-Appellant.

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, statutory involuntary manslaughter (discharge of an intentionally aimed firearm resulting in death), MCL 750.329, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 15 to 30 years for the second-degree murder conviction and 7 to 15 years for the manslaughter conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm defendant's convictions but remand for *Crosby*[1] proceedings in accordance with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

On November 2, 2013, at approximately 4:30 a.m., defendant shot and killed 19-year-old Renisha McBride on the front porch of defendant's home in Dearborn Heights. McBride had been in a car accident before the shooting, and it is uncertain how or why she came to be at defendant's home. She had marijuana in her system and her blood alcohol level was .218. Defendant admitted that he shot McBride, but he asserted at trial that he did so in self-defense because he thought McBride was trying to break into his home. However, the evidence showed that McBride was not armed at the time of the shooting, and she possessed no burglary tools. The jury convicted defendant of second-degree murder, statutory involuntary manslaughter, and felony-firearm. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

## I. JURY INSTRUCTIONS

Defendant first argues that the trial court erred when it denied his request for a jury instruction based on MCL 780.951(1), which would have afforded him the benefit of a rebuttable presumption that he had an honest and reasonable belief that imminent death or great bodily harm would occur. Specifically, defendant maintains this instruction was warranted because there was evidence to support the assertion that McBride was in the process of breaking and entering at the time of the shooting.

We review de novo questions of law, and we review for an abuse of discretion a trial court's determination whether a jury instruction applies to the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Id.* Thus, "[r]eversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).

A successful claim of self-defense "requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Dupree*, 486 Mich at 707 (citation and quotation marks omitted). The Self-Defense Act (SDA), MCL 780.971 *et seq.*, "codified the circumstances in which a person may use deadly force in self-defense . . . without having the duty to retreat." *Dupree*, 486 Mich at 708. MCL 780.972(1)(a) provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

In this case, the trial court instructed the jury on self-defense, including the grounds for self-defense, the prosecutor's burden of proof regarding self-defense, the fact that an individual in his home has no duty to retreat, and the fact that a porch is considered part of a home. In addition to the instructions given, defendant argues on appeal he was also entitled to a jury instruction based on MCL 780.951(1), which provides a rebuttable presumption that a defendant who uses deadly force acted with "an honest and reasonable belief that imminent death . . . or great bodily harm to himself . . . will occur" if *both* of the following apply:

> (a) The individual against whom deadly force or force other than deadly force is used is *in the process of breaking and entering a dwelling* or business

-2-

premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a). [Emphasis added.]

Considering the plain language of the statute, these two subsections differ in that subsection (a) focuses on the conduct of the person against whom deadly force is used, whereas subsection (b) focuses on the state of mind of the person using deadly force.

In light of defendant's testimony about his fear arising from the extent of the banging and pounding noise he heard at two different doors of his home, the fact that the banging occurred at such an early hour of the morning, and the fact that there had been other criminal incidents in the neighborhood that summer, we agree that there was sufficient evidence to support a finding that defendant may have honestly and reasonably believed that a person was in the process of breaking and entering his home. See MCL 780.951(1)(b). However, the fact that defendant may have reasonably perceived McBride as attempting to break into his home does not establish that she was actually trying to do so. Cf. *People v Mills*, 450 Mich 61, 83; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) ("People can appear one way to someone else when in actuality there is something else causing them to act the way they are being observed."). In other words, the principal dispute in this case concerns whether there was evidence to support the occurrence of conduct required under subsection (a).

Given the evidence presented at trial, we conclude that the trial court did not abuse its discretion when it determined that the evidence did not support the assertion that McBride was actually in the process of breaking and entering when the shooting occurred. "A breaking is any use of force, however slight, to access whatever the defendant is entering." *People v Heft*, 299 Mich App 69, 76; 829 NW2d 266 (2012). There was evidence that McBride was "banging" on defendant's front and side doors, which would potentially constitute a "use of force." Nonetheless, the evidence did not support a finding that McBride was attempting to access the house so as to be considered "in the process of breaking and entering a dwelling." See MCL 750.115(1); *Heft*, 299 Mich App at 75-76. On the evening in question, McBride was extremely intoxicated and she crashed her car. Appearing disorientated, McBride wandered away from the crash site and she somehow made her way to defendant's home. McBride had no burglar tools with her at defendant's house, and there was no damage to the locks, door handles, or doors of defendant's home. At best, the evidence showed that McBride loudly pounded on defendant's doors and that the screen in the outer front door had "dropped" down. But, without more, loud ineffectual banging on a door does not support the claim that McBride was in the process of breaking and entering. Moreover, at the point in time when defendant actually fired the lethal shot, McBride had apparently stopped pounding on the door. Defendant testified that he went to the front door, even though he had last heard banging at the side door. When he opened it, McBride came around the side of the home and defendant shot her before she could explain her presence. On this record, the evidence does not support the assertion that McBride was in the process of breaking or entering when she was shot by defendant. Consequently, the trial court

did not abuse its discretion by denying defendant's request for a jury instruction based on MCL 780.951(1).[2]

## II. PROSECUTORIAL MISCONDUCT

Defendant next argues that several alleged instances of misconduct by the prosecutors denied him a fair trial. A defendant must "contemporaneously object and request a curative instruction" to preserve a claim of prosecutorial misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant objected to the prosecutor's handling of the murder weapon during the prosecutor's cross-examination of defendant. Accordingly, that issue is preserved. However, he did not object to the remaining instances of alleged misconduct or he did not object on the same basis now presented on appeal. Therefore, the majority of defendant's claims of misconduct are unpreserved. See *id.*

Generally, issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *Id.* However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). Under this standard, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. The propriety of a prosecutor's remarks will depend on the particular facts of the case, meaning that "a prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Callon*, 256 Mich App at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

Defendant first argues that one of the prosecutors committed misconduct when she held the murder weapon in an unsafe manner such that it was pointed in the direction of the jurors during her cross-examination of defendant. The gun in question was admitted into evidence, it was unloaded at the time of the incident, and, as noted, prosecutors are typically afforded great

---

[2] We note briefly that, even if the trial court should have instructed the jury on the presumption found in MCL 780.951(1), defendant has not shown that it is more probable than not that this error affected the outcome of the proceedings. *McKinney*, 258 Mich App at 163. Defendant admitted that he shot McBride and his only claim was that he did so in self-defense. However, there was scant evidence of self-defense while, in contrast, the jury received detailed instructions on defendant's self-defense theory and the prosecutor presented ample evidence to disprove defendant's claim of self-defense beyond a reasonable doubt. On this record, there is not a reasonable probability that the instruction at issue would have affected the outcome.

latitude regarding their conduct at trial. *Id.* Nonetheless, defendant argues that the prosecution's "grandstanding with the weapon" was improper and deprived him of a fair trial because at least one of the jurors appeared startled by the prosecutor's handling of the gun. However, in the course of the trial as a whole, we cannot see that the incident deprived defendant of a fair and impartial trial. The incident was brief and isolated, there was no apparent intended purpose to scare anyone, and the trial court ordered the attorneys not to point the gun at the jurors during closing arguments. Moreover, defense counsel in fact used the incident to defendant's advantage by reminding the jury of the prosecutor's actions, and the jury's reaction, during closing argument, in the context of emphasizing his position that defendant had brought the gun to the door with him in order to frighten the intruder away because the weapon was "scary." Under the circumstances, this isolated incident did not deny defendant a fair trial. Cf. *People v Bosca*, 310 Mich App 1, 35; 871 NW2d 307 (2015) (finding that the prosecutor's demonstration with a circular saw used to threaten the victims did not deprive the defendant of a fair trial).

Defendant also argues that the prosecutor misstated the law during closing argument when commenting on the necessary mens rea to support convictions for the different charged offenses. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id.* In the instant case, defendant was charged with second-degree murder, common-law manslaughter as a lesser included offense, and statutory manslaughter under MCL 750.329. When discussing the charged crimes during closing argument, the prosecutor incorrectly commented that, had the discharge of the weapon been accidental, defendant would still be guilty of second-degree murder. This was not a correct statement of the law because the malice necessary to support second-degree murder "is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Contrary to the prosecutor's framing of the issue, an act done accidentally, or even with gross negligence, would not constitute malice. See *id.* at 466-467; *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004); CJI2d 7.1.

However, any error in the prosecution's explanation of the law in this regard did not deprive defendant of a fair trial because the trial court properly instructed the jury on the elements of second-degree murder and the lesser included offense of common-law manslaughter and, in particular, the specific mens rea necessary to support a second-degree murder conviction as opposed to the lesser offense of common-law involuntary manslaughter. The jury was further instructed that if there was a conflict between the trial court's explanation of the law and that offered by the attorneys, the jury must follow the trial court's instructions. Under these circumstances, any misstatement of the law by the prosecutor did not affect defendant's substantial rights. See *Grayer*, 252 Mich App at 357.

Defendant next argues that the prosecutor misstated the law when discussing the elements of statutory involuntary manslaughter by failing to acknowledge that self-defense could be used as a defense to this charge and suggesting that there was "no dispute" that the elements of this offense had been shown. Our review of the record reveals that the prosecutor merely argued that the elements of the offense had been established, and we see nothing improper in this argument.

-5-

Moreover, while the prosecutor did not discuss self-defense in relation to this charge, the trial court instructed the jury on self-defense and defense counsel argued for the applicability of this defense. Defendant has not shown plain error and he is not entitled to relief on this basis.

Defendant also asserts that, with respect to self-defense, the prosecutor misstated the law when she asserted that defendant had other options such as keeping the door shut and going to "a different part of [his] house" rather than engaging with McBride. Troublingly, the prosecutor asserted that going to a different part of the house could not be characterized as "retreating." To the extent the prosecutor suggested that defendant had an obligation to retreat to another area of his home, this was improper because a person does not have a duty to retreat in his or her own home. *People v Richardson*, 490 Mich 115, 121; 803 NW2d 302 (2011). However, this potentially misleading remark does not entitle defendant to relief because elsewhere the prosecutor expressly acknowledged that there is no duty to retreat in a person's own home, the trial court instructed the jury that a person does not have a duty to retreat while in his or her own home, and the jury was informed that a porch is considered part of a home. Given the proper instruction by the trial court, any misstatement by the prosecutor did not affect defendant's substantial rights. See *Grayer*, 252 Mich App at 357.

Next, defendant argues that the prosecutor improperly vouched for defendant's guilt when she stated that she had seen "more homicide cases than [she] care[d] to recall," that "this case is no different than a typical murder case," that defendant was "no different than a typical murder defendant," and that "[m]urder defendants try to deflect, try to lie[,] [t]ry to get themselves out of trouble." In a related argument, defendant also argues that the following statements by the prosecutor during closing argument were improper:

> Because our job, ladies and gentlemen, is to see that justice is served. Our job is to prosecute the guilty. And your job is to make that determination. You decide whether or not we've done our job properly. That's your decision.

> You have to tell us whether or not we've met our burden. We don't run away from our burden. It's our burden. That's what our constitution says. We don't take it lightly that we would charge a home owner. We don't take that lightly.

> There's plenty of home owners that haven't been charged. We look at the law. We are guided by what the law requires. And the law in this case required a charge of murder in the second degree. And the intentionally aiming that gun.

> You guys get to make the final call. There's no self-defense here. Where's the fear? Where's the fear?

It is improper for a prosecutor to use the prestige of the prosecutor's office to inject personal opinion or for the prosecutor to ask the jury to suspend its power of judgement in favor of the wisdom or belief of the prosecutor's office. *People v Bahoda*, 448 Mich 261, 286; 531 NW2d 659 (1995). In this case, viewed in isolation, some of the prosecutor's remarks could be understood as an invitation for the jury to suspend its own critical analysis of the evidence and accept the prosecutor's assurances of the defendant's guilt. Viewed in context, however, the

remarks constituted an argument, albeit unartfully presented, that the prosecution had met its burden in overcoming defendant's self-defense claim. The prosecutor repeatedly stated that it was up to the jury to decide whether the prosecution had met its burden of proving defendant guilty. Moreover, any improper prejudicial effect could have been cured by an appropriate instruction, upon request. Accordingly, there was no outcome-determinative plain error. *Unger*, 278 Mich App at 235.

Defendant next argues that a prosecutor improperly denigrated defense counsel when she discussed the fact that defendant had changed his initial claim that the shooting was accidental to a claim that he acted in self-defense. A prosecutor may not personally attack defense counsel. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003). Likewise, the prosecutor may not personally attack the defendant with "intemperate and prejudicial remarks," and may not suggest that a defendant or defense counsel is trying to manipulate or mislead the jury. *People v Light*, 480 Mich 1198; 748 NW2d 518 (2008); *Bahoda*, 448 Mich at 283; *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411(2001). Viewed as a whole, the thrust of the prosecutor's argument was to properly suggest that defendant should not be believed when he stated that he was in fear when he shot McBride because he had earlier implied to the police that the shooting was "accidental." But in doing so, the prosecutor improperly accused defense counsel of having "coached" defendant to change his story to one of self-defense. This type of attack on defense counsel was wholly inappropriate. See *Light*, 480 Mich at 1198. However, because an appropriate jury instruction could have cured any perceived prejudice, reversal is not required. *Unger*, 278 Mich App at 235.

Defendant also argues that the prosecutor improperly appealed to the jurors' sympathy for McBride and mischaracterized the defense counsel's self-defense argument as an attack on the victim's character. "Appeals to the jury to sympathize with the victim constitute improper argument." *Watson*, 245 Mich App at 591. However, an otherwise improper remark may not require reversal when offered in response to an issue raised by defense counsel. *Dobek*, 274 Mich App at 64. Such is the case here. That is, the prosecutor's rebuttal argument was responsive to defense counsel's earlier argument that focused on the victim's actions. Defense counsel argued that McBride was in the process of "changing" because she was "coming down" from her intoxication, and claimed that "alcohol is what caused all of this." The prosecutor's rebuttal argument, essentially that 19-year-old McBride did not deserve to die simply because she was drunk and high, was responsive to defense counsel's argument. Moreover, any prejudicial effect could have been cured with a jury instruction upon request, meaning that defendant has not shown plain error. *Unger*, 278 Mich App at 235.

For these reasons, defendant is not entitled to reversal on the basis of this issue. The prosecutor's conduct did not deny defendant a fair trial.

### III. DOUBLE JEOPARDY

Defendant next argues that his convictions for both statutory involuntary manslaughter and second-degree murder, arising from the death of one victim, violate the double jeopardy prohibition against multiple punishments for the same offense. In particular, defendant argues that double jeopardy principles should prevent convictions for both second-degree murder and statutory manslaughter under MCL 750.329 because the crimes contain contradictory elements

insofar as murder requires malice while MCL 750.329(1) specifies that statutory manslaughter must be committed "without malice."

We review this question of constitutional law de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004). The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb. . . ." US Const V. In *People v Miller*, 498 Mich 13, 17-19; 869 NW2d 204 (2015), our Supreme Court recently provided a comprehensive overview of the constitutional double jeopardy protections, and, in particular, the analysis to use when determining whether dual convictions violate the "multiple punishments" strand of double jeopardy:

> The multiple punishments strand of double jeopardy "is designed to ensure that courts confine their sentences to the limits established by the Legislature" and therefore acts as a "restraint on the prosecutor and the Courts." The multiple punishments strand is not violated "[w]here 'a legislature specifically authorizes cumulative punishment under two statutes. . . .'" Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial. "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."

> The Legislature, however, does not always clearly indicate its intent with regard to the permissibility of multiple punishments. When legislative intent is not clear, Michigan courts apply the "abstract legal elements" test articulated in [*People v Ream*, 481 Mich 223; 750 NW2d 536 (2008),] to ascertain whether the Legislature intended to classify two offenses as the "same offense" for double jeopardy purposes. This test focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments. Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if "each of the offenses for which defendant was convicted has an element that the other does not. . . ." This means that, under the *Ream* test, two offenses will only be considered the "same offense" where it is impossible to commit the greater offense without also committing the lesser offense.

> In sum, when considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream* to discern legislative intent. [Footnotes omitted.]

Consequently, to determine whether there is a double jeopardy violation in this case, we first consider whether the statutory language evinces a clear intent with respect to the

-8-

permissibility of multiple punishments. *Id.* In particular, the two statutes at issue are MCL 750.317 and MCL 750.329(1). Second-degree murder is codified at MCL 750.317, which states:

> All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same.

In comparison, statutory involuntary murder is set forth in MCL 750.329(1), which provides:

> A person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death.

Neither statute includes language that plainly indicates whether or not the Legislature intended to authorize multiple punishments. Cf. *Miller*, 498 Mich at 22-23. In *Miller*, the Court found that the express authorization of multiple convictions in one section of the OWI statute in context of a multi-section statute where other sections were silent as to multiple convictions was, in fact, clear evidence of an intent to exclude multiple convictions for violations of other sections of the same act. *Id*. at 24-25. No such argument is offered in this case. Instead, defendant argues on appeal that the legislative intent to prohibit multiple punishments is expressed in the inconsistency between second-degree murder and MCL 750.329(1), insofar as second-degree murder requires a finding of malice while MCL 750.319(1) involves a crime committed "without malice." See *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Defendant cites no authority for this proposition, nor are we aware of any. To the contrary, when an offense requires criminal intent, the necessary *mens rea* is simply an element of the offense. See, generally, *People v Kowalski*, 489 Mich 488, 499 n 12; 803 NW2d 200 (2011). And, when comparing elements under the abstract legal elements test, if offenses contain differing elements, conviction under both does not constitute a double jeopardy violation.[3] See *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007); *People v Werner*, 254 Mich App 528, 535-536; 659 NW2d 688 (2002). In short, the abstract legal elements test applies in this case and, given that the offenses at issue obviously involve different elements, there was no double jeopardy violation. See *Smith*, 478 Mich at 70 (detailing differing elements of second-degree murder and statutory manslaughter); *Strawther*, 480 Mich at 900.

### IV. SENTENCING

---

[3] Indeed, while defendant frames his argument as one involving double jeopardy principles, in actuality his complaint is that the jury reached inconsistent verdicts insofar as it convicted him of both second-degree murder requiring malice and statutory involuntary manslaughter under MCL 750.329(1), which must be committed without malice. As noted, this claim of inconsistency does not amount to a double jeopardy violation. See generally *People v Wilson*, 496 Mich 91, 102; 852 NW2d 134 (2014). Moreover, "inconsistent verdicts within a single jury trial are permissible and do not require reversal." *People v Putman*, 309 Mich App 240; 870 NW2d 593 (2015). "Juries are not held to any rules of logic nor are they required to explain their decisions." *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980).

Defendant lastly argues that he is entitled to resentencing because the trial court sentenced him at the low end of the sentencing guidelines range, based on its erroneous belief that it was bound to sentence him within the guidelines range absent a substantial and compelling reason for a departure. In keeping with this Court's decision in *People v Terrell*, __ Mich App __; __ NW2d __ (2015) (Docket No. 321573), we remand for *Crosby* proceedings in accordance with the procedures set forth in *Lockridge*.

In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy the constitutional violation, the Court severed MCL 769.34(2) "to the extent that it is mandatory" and held that "sentencing courts will hereafter not be *bound* by the applicable sentencing guidelines range[.]" *Lockridge*, 498 Mich at 391-392. The Court also struck down MCL 769.34(3), which required a "substantial and compelling reason" to depart from the guidelines range, and held that a court may exercise its discretion to depart from the guidelines range without articulating substantial and compelling reasons. *Id.* Following *Lockridge*, a departure sentence need only be reasonable. See *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329), slip op at 21-24.

With respect to a defendant's entitlement to relief on appeal, in *Lockridge*, the Court specified that unpreserved claims of error involving judicial fact-finding were subject to plain error analysis and that plain error cannot be established when "(1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Lockridge*, 498 Mich at 394-395. Conversely, a defendant will have made a threshold showing of error if there is no upward departure involved and "the facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentence." *Id.* at 395. A defendant who makes this threshold showing of potential plain error is entitled to a *Crosby* remand for further inquiry. *Id.*

Following *Lockridge*, this Court has addressed preserved claims of sentencing error and determined that a *Crosby* remand is appropriate, even in the absence of evidence that judicial fact-finding increased the minimum sentence, if the trial court's use of the sentencing guidelines was mandatory at the time of sentencing. Most notably, in *Terrell*, this Court explained:

> In [*People v Stokes,* __ Mich App __; __ NW2d __ (2015)] this Court concluded that where judicially-found facts increased the minimum sentence guidelines range, the proper remedy was to remand for the *Crosby* procedure to be followed to determine whether the error was harmless. In this case, however, any judicial fact-finding did not increase the minimum sentence guidelines because the scoring was supported by the jury verdict. Nonetheless, we adopt the remedy crafted in *Stokes* as the appropriate remedy here, because regardless of the fact that judicial fact-finding did *not* increase defendant's minimum sentence

-10-

guidelines range, the trial court's compulsory use of the guidelines was erroneous in light of *Lockridge*. Here, the trial court was not obligated to sentence defendant within the minimum sentence guidelines range and, instead, was permitted to depart from the guidelines range without articulating a substantial and compelling reason, so long as the resulting sentence was itself reasonable. Therefore, we conclude that a remand for the *Crosby* procedure is necessary to determine whether the error resulting from the compulsory use of the guidelines was harmless. [*Terrell*, slip op at 9 (footnotes omitted).]

In this case, the sentencing guidelines as scored resulted in a recommended minimum sentence range of 180 to 300 months or life. The trial court imposed a sentence at the lowest end of that range. In doing so, the court commented that it "cannot go below the guidelines." Defendant did not object at sentencing, and he does not argue on appeal that judicial fact-finding altered the minimum guideline range as required to establish plain error under *Lockridge*. But, defendant did move this Court for a remand for resentencing under *Lockridge*. Under *Terrell*, this was sufficient to preserve his *Lockridge* challenge. See *Terrell*, slip op at 8 & n 38. Moreover, as in *Terrell*, defendant was sentenced before the Supreme Court decided *Lockridge*, which significantly altered the manner in which a trial court is to consider and apply the statutory sentencing guidelines. Consequently, because the trial court's compulsory adherence to the guidelines range was erroneous, in keeping with *Terrell*, we remand for *Crosby* proceedings. Defendant has the option of avoiding resentencing by promptly notifying the trial court of that decision. *Lockridge*, 498 Mich at 398. If notification is not received in a timely manner, the trial court should continue with the *Crosby* proceedings as described in *Lockridge*.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra

-11-