# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 22, 2017

Plaintiff-Appellee,

v

No. 330612
Oakland Circuit Court
LC No. 2014-251162-FC

ALEX JAY ADAMOWICZ,

Defendant-Appellant.

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree murder, MCL 750.316(1)(a). The trial court sentenced defendant to life imprisonment without parole. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from the death of John Watson at the Tivoli Apartments in Walled Lake. Watson and defendant lived in the same building. In the early morning hours of April 12, 2014, Watson entered defendant's apartment to drink and smoke "weed." According to defendant, Watson became agitated. When defendant asked Watson to leave and threatened to call the police, an altercation ensued, which ended with defendant cutting Watson's throat.[1] Watson died from the injury.

Defendant covered Watson's body with blankets, and moved him from the couch to a closet in the apartment. He also attempted to clean the blood spatter from the walls and the couch. Defendant continued to live in the apartment until May 11, 2014, when defendant's mother, Marie Holley, discovered Watson's body. That day, the two drove to the Wixom Police Station. While at the station, defendant spoke with Walled Lake Police Detective Andrew Noble and confessed to killing Watson, but maintained that he did so in self-defense.

---

[1] Dr. Ruben Ortiz-Reyes, the deputy medical examiner that conducted Watson's autopsy, testified that the injury to Watson's neck was 6 inches by 2 inches and 4 inches deep.

-1-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel was ineffective for failing to call an expert witness that could explain his behavior following Watson's death.

Generally, to preserve an ineffective assistance of counsel argument, a defendant must file a motion for a new trial or *Ginther*[2] hearing in the trial court to establish evidentiary support for the argument. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant failed to raise this issue in a motion for a new trial or *Ginther* hearing in the trial court, and this Court denied defendant's motion to remand. *People v Adamowicz*, unpublished order of the Court of Appeals, entered September 23, 2016 (Docket No. 330612). Thus, our review is limited to the appellate record. *Sabin (On Second Remand)*, 242 Mich App at 658-659.[3]

Analysis of ineffective assistance of counsel arguments involves mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*.

To evaluate whether ineffective assistance of counsel was provided, we use the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999), citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). The defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed, *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014), and the defendant must overcome the presumption that defense counsel's actions constituted sound trial strategy, *Trakhtenberg*, 493 Mich at 52. Further, the defendant must establish a factual predicate for his claim. *Hoag*, 460 Mich at 6.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). However, such a decision must be made only after counsel has conducted an adequate investigation of the relevant facts and law. *People v Ackley*, 497 Mich 381, 390; 870 NW2d 858 (2015). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Payne*, 285 Mich App at 190, quoting *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *People v Chapo*,

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Defendant's submission of Coryanna Ku's and Edward Bajoka's affidavits violates the court rule that prohibits citing to matters outside the record. MCR 7.210(A)(1); see also *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000) ("[P]arties cannot enlarge the record on appeal by the use of affidavits.").

283 Mich App 360, 371; 770 NW2d 68 (2009), quoting *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

Defendant correctly asserts that the prosecution focused its case on the theory that, had he killed Watson in self-defense, he would have immediately come forward to the police. In his opening statement and closing argument, the prosecutor repeatedly said, "The guilty flee when no man pursues, but an innocent man is as bold as a lion." Further, the prosecution's witnesses testified regarding defendant's calm demeanor when speaking to the police about the incident, as well as the actions defendant took to conceal Watson's death, including hiding the body and attempting to clean the blood.

However, defendant failed to establish a factual predicate for his argument that, had defense counsel called an expert witness to explain defendant's behavior following Watson's death, there is a reasonable probability that the outcome of trial would have been different. He merely speculates that expert testimony regarding behaviors associated with post-traumatic stress disorder would have been favorable and would have effectively countered the prosecution's theory. See *Payne*, 285 Mich App at 190 (holding that the defendant failed to demonstrate ineffective assistance of counsel because he "merely speculated that an independent expert could have provided favorable testimony").

Moreover, defendant cannot overcome the presumption that defense counsel's decision not to call an expert constituted sound trial strategy. Rather than placing more intense focus on defendant's behavior following Watson's death, it appears that defense counsel attempted to rebut the prosecution's argument by acknowledging defendant's actions, but concentrating on defendant's description of, and state of mind during, his altercation with Watson. As an example, in his opening statement, defense counsel opined that people react to traumatic events differently, and that defendant may not have had the best reaction, but asked the jury not to judge the case based on defendant's behavior after Watson's death. Further, during direct examination of defendant, he asked defendant to describe what happened during the altercation with Watson, and inquired as to whether defendant feared for his life at the time of the incident. Although this strategy may have ultimately been unsuccessful, this Court "will not second-guess counsel regarding matters of trial strategy," or "assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Thus, defendant's ineffective assistance of counsel argument fails.

## II. PROSECUTORIAL ERROR

Defendant next argues that he is entitled to a new trial because the prosecutor's questions to him and to Detective Noble regarding his ability to flee during the altercation with Watson, as well as the prosecutor's statements during closing argument suggesting that he could have safely retreated, constituted prosecutorial misconduct. He also asserts that defense counsel provided ineffective assistance when he failed to object to the questions and statements.

To preserve a prosecutorial error[4] argument, a defendant must contemporaneously object to the alleged error and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded " 'except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defense counsel failed to object to the prosecution's questions regarding defendant's ability to flee during the incident, or to the prosecutor's statements during closing argument. Thus, the issue is not preserved for appellate review.

Unpreserved issues of prosecutorial error are reviewed for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. To establish plain error affecting substantial rights "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Unger*, 278 Mich App at 235, quoting *Callon*, 256 Mich App at 329.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[W]e consider issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

During direct examination, the prosecutor asked Detective Noble several times whether, during the interviews with defendant, defendant ever said that he could have fled the apartment during the altercation with Watson. He also asked defendant similar questions during cross-examination, and referenced this testimony throughout his closing argument. Defendant argues that these questions and statements were legally irrelevant and prejudicial because defendant had no duty to retreat before killing Watson in self-defense.

---

[4] Although this type of issue is generally referred to as "prosecutorial misconduct," this Court has stated that, "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that arguments "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted). Nevertheless, regardless of "what operative phrase is used, [this Court] must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id*. at 88, citing *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Here, we will refer to defendant's argument as prosecutorial error, as the argument is limited to technical errors by the prosecutor.

In 2006,[5] the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq.*, which "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). MCL 780.972 provides, in pertinent part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"The reasonableness of a person's belief regarding the necessity of deadly force 'depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor.' " *People v Guajardo*, 300 Mich App 26, 42; 832 NW2d 409 (2013), quoting *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011).

We note initially that "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence," *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999), and prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case," *People v Mann*, 288 Mich App 114, 120; 792 NW2d 53 (2010) (citation and quotation marks omitted). Defendant has presented no evidence that the prosecutor did not act in good faith when he elicited the now-challenged testimony, or when, during closing argument, he reasonably inferred from this testimony that defendant lacked an honest and reasonable belief that the use of deadly force against Watson was necessary.

Further, the record and relevant caselaw support the conclusion that the prosecutor acted in good faith when presenting the evidence. In *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002), decided before enactment of the SDA, the Michigan Supreme Court stated: "We reaffirm today that the touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*. An accused's conduct in failing to retreat, or to otherwise avoid the intended harm, may in some circumstances – other than those in which the accused is the victim of a sudden, violent attack – indicate a lack of reasonableness or necessity in resorting to deadly force in self-defense." But the Court further reasoned that "[i]t is universally accepted that retreat is not a factor in determining whether a defensive killing was necessary when it occurred in the accused's dwelling[.] *Id*. at 134.

However, in *People v Richardson*, 490 Mich 115, 118-121; 803 NW2d 302 (2011), a case where the defendant fired shots from his porch, the Court upheld the following jury instruction:

---

[5] Except as provided in MCL 780.972, the Self-Defense Act (SDA) did "not modify the common law of this state in existence on October 1, 2006 regarding the duty to retreat before using deadly force or force other than deadly force." MCL 780.973.

(1) A person can use deadly force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed [he/she] needed to use deadly force in self-defense.

(2) However, a person is never required to retreat if attacked in [his/her] own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack.

In so doing, the Court reasoned: "At trial, the prosecutor never argued that defendant was required to, or even should have, retreated from the altercation. In attempting to rebut defendant's self-defense claim, the prosecutor argued only that defendant could not establish that he honestly and reasonably believed that he needed to use deadly force." *Id*. at 120. The prosecutor clearly stated, in his closing argument, that defendant had no duty to retreat by law, and that he introduced testimony regarding defendant's ability to flee during the altercation with Watson for the purpose of challenging whether defendant honestly and reasonably believed he needed to use deadly force.

Regardless, even assuming, without deciding, that the prosecutor erred by eliciting the testimony, defendant fails to demonstrate that the error affected the outcome of his trial. The court instructed the jury that a person attacked in his own home has no duty to retreat. Curative instructions will cure most inappropriate prosecutorial statements, and it is presumed that jurors follow their instructions. *Unger*, 278 Mich App at 235.

Further, the jury's conviction of defendant for first-degree murder demonstrates that it found he killed Watson with premeditation and deliberation, not just that he lacked an honest and reasonable belief deadly force was necessary to prevent imminent death or great bodily injury. Substantial evidence beyond the testimony regarding defendant's ability to flee supported this determination. " 'The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation.' " *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (citation omitted). " 'To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.' " *Id*. at 266, quoting *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation and quotation marks omitted). One factor to consider when analyzing premeditation is a defendant's actions before and after a crime. *Bass*, 317 Mich App at 266. The extreme measures defendant took to conceal Watson's death, the injury defendant inflicted, the searches on defendant's laptop regarding drinking bleach and rat poison, and defendant's testimony that he wanted to get back at Watson for hitting him during the altercation, demonstrate premeditation and deliberation.

Because defendant cannot establish that the prosecutor committed an outcome-determinative error, his ineffective assistance of counsel argument also fails. Defense counsel need not make fruitless or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III. EVIDENTIARY ERROR

Defendant asserts that the court abused its discretion when it admitted into evidence testimony regarding, and a booking photograph from, his April 13, 2014 interaction with police, as well as an audio-less video of his first interview with Detective Noble.

To preserve an evidentiary error for appeal, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1) and *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). Prior to trial, the prosecution filed a notice of intent to introduce evidence of defendant's April 13, 2014 contact with police under MRE 404(b), asserting that the court should admit the evidence for the non-character purpose of demonstrating defendant's intent and knowledge. On that day, defendant was pulled over by Novi Police Officer Daniel Jenkinson for drunk driving, but failed to disclose Watson's death to the officer. In response, defendant argued that the contact could not be used to prove his guilty mind because the prosecution had not proven that Watson was deceased on that date, evidence of drunk driving is not relevant to murder, and evidence of drunk driving would be overly prejudicial.

Defendant's arguments are not preserved. Defendant did not argue in the trial court, as he does on appeal, that the evidence was not relevant to his guilty mind because silence is a symptom of psychological trauma. Further, defense counsel withdrew the arguments related to drunk driving at the motion hearing when the court ordered that it would admit evidence of the incident without reference to the fact that defendant was pulled over for drunk driving, and failed to object at trial when Officer Jenkinson testified that defendant was intoxicated, or when the prosecution offered defendant's booking photograph for admission.

With regard to the video, when the prosecutor moved to admit the video of defendant's first interview with Detective Noble, and play the video for the jury, defense counsel objected on the basis that, with no audio, "it would potentially prejudice [defendant] if the jury would interpret some of his hand movements or gestures in a way that's totally out of context . . . ." However, defense counsel then admitted that he opened the door to the video's admission. Thus, defendant waived his evidentiary error argument as to the video.

Unpreserved evidentiary claims are reviewed for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). A plain error affects substantial rights when "the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted).

In general, other-acts evidence may not be introduced "to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, such evidence may be admissible to demonstrate "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." MRE 404(b)(1).

Defendant asserts that the evidence regarding his April 13 interaction with police constituted character evidence masquerading as evidence of intent because it did not "make a material fact – guilty mind – more or less probable than it would be without the evidence." Evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence.' " *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), quoting MRE 401. " 'The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation.' " *Bass*, 317 Mich App at 265-266 (citation omitted). Further, "[o]nce a defendant raises the issue of self-defense and 'satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist,' the prosecution must 'exclude the possibility' of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014), quoting *Dupree*, 486 Mich at 709-710.

Despite defendant's argument to the contrary, evidence that he interacted with a police officer on April 13, after Watson's death, was relevant to proving that defendant did not act in self-defense, but intended to kill Watson. Factors to consider when analyzing premeditation include a defendant's actions before and after a crime. *Bass*, 317 Mich App at 266. Officer Jenkinson testified that, during his 1½ to 2 hour interaction with defendant, defendant never mentioned killing Watson in self-defense. From that testimony, a rational juror could conclude both that defendant did not act in self-defense, and that he killed Watson with premeditation, because it is reasonable to infer that a person who believes they committed a justifiable killing would divulge such to another. This is especially true considering that, in his written statement to police, defendant said he "was so scared people would just call from the smell and [he] would just confess if anyone asked."

Additionally, the probative value of the testimony and defendant's booking photograph was not outweighed by their prejudicial effect. Relevant evidence may be excluded if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. " 'Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011), quoting *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

Defendant argues that the reason for his interaction with police and booking photograph – drunk driving – became apparent during Officer Jenkinson's testimony, making the evidence overly prejudicial because it "implied that just days after Mr. Watson's death, [he] was making reckless decisions and endangering himself and others." However, defendant himself testified that he was put in the "drunk tank" during his interaction with police on April 13, and that after Watson's death, he stayed home all the time and drank and smoked "weed." "[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . ." *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146 (2007). Further, it is unlikely that knowing defendant was intoxicated during the April 13 contact with police affected the jury's perception of Officer Jenkinson's testimony or defendant's photograph, or its ultimate decision in the case. The evidence was clearly intended to demonstrate that defendant had the opportunity to tell the police

about Watson's death, but failed to do so. And, as discussed, substantial evidence beyond this police interaction existed from which the jury could have concluded that defendant killed Watson with premeditation and deliberation, rather than in self-defense.

With regard to defendant's argument that the trial court erred by admitting into evidence the video of his first interview with Detective Noble, we initially hold that defendant waived this issue. During defense counsel's cross-examination of Detective Noble regarding the interview, the following exchange occurred:

> *Q*. And it's your testimony that [defendant] was completely calm that entire time, correct?
>
> *A*. Yes, correct, for what had taken place.
>
> *Q*. He wasn't crying?
>
> *A*. I didn't see tears.
>
> * * *
>
> *Q*. Okay, and had there been a video of that interview we could have seen what his demeanor was, correct?
>
> *A*. Correct.

Defense counsel admitted that he opened the door to admission of the video with this line of questioning. Again, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . ." *Griffin*, 235 Mich App at 46.

Regardless, the probative value of the video's admission was not outweighed by the danger of unfair prejudice. Defendant admitted that he appeared calm throughout the interview depicted in the video, and explained the hand gestures he made. At trial, defendant used one hand to demonstrate for the jury how he pushed the knife into Watson's neck. However, when questioned further by the prosecutor, defendant clarified that he used two hands to push the knife into Watson's neck, as demonstrated in the video.[6] Thus, the jury did not interpret the gestures out of context, as defendant suggests, and the trial court did not err by admitting the video into evidence.

---

[6] Defendant appears calm throughout the video. Further, defendant does appear, in the video, to demonstrate how he held the knife when cutting into Watson's neck. He begins with two hands, and then switches to one as he seemingly pulls the knife through Watson's neck.

## IV. CRUEL AND UNUSUAL PUNISHMENT

Finally, defendant argues that the life sentence mandated by MCL 750.316(1), is unconstitutional both on its face and as applied, because it violates the prohibitions against cruel and unusual punishment in both the Michigan and United States Constitutions.

To preserve the argument that a sentence is unconstitutionally cruel or unusual, a defendant must advance the claim in the trial court. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Defendant failed to advance this argument in the trial court, so it is not preserved for appellate review.

In general, this Court reviews constitutional questions de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). " 'Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.' " *Id*., quoting *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009) (citation and quotation marks omitted). However, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

In *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), the Michigan Supreme Court upheld the life sentence mandated by MCL 750.316, under both the United States and Michigan Constitutions. Defendant cites *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and scientific studies, in support of his argument that it is unconscionable to apply mandatory minimum sentences to all offenders, including those whose brains are still developing. But *Miller* only held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments,' " *id*. at 2460, 2468, and defendant was over 18 at the time he killed Watson. As he points to no further legal authority directly supporting his argument, his sentence did not violate the United States and Michigan Constitutions.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray