*117 MARILYN Kelly, J.
This case involves the use of deadly force, allegedly in self-defense. The Court heard oral argument on whether to grant leave to appeal.[1] We asked the parties whether the trial court was correct when it instructed the jury using CJI2d 7.16, which permits consideration of whether the defendant had a duty to retreat.[2]
We hold that it was appropriate to use the standard jury instruction in this case. Defendant was on his porch during the altercation in question, so he had no duty to retreat. However, there was adequate evidence from which the jury could conclude that he did not need to use deadly force to defend himself. Rather than grant leave to appeal, we affirm defendant’s convictions for assault with intent to commit great bodily harm less than murder and possession of a firearm during the commission of a felony (felony-firearm).
Defendant and his wife had a poor relationship with some of their neighbors, including the Moores, which resulted in several altercations predating the events involved in this case. On September 25, 2008, the son of Brandy Abrams, one of the victims, allied with other neighbors to hurl insults at defendant and his wife and throw rocks and eggs at their home. Defendant’s wife responded in kind. At some point, she struck the Abrams boy in the chest, and someone called Brandy Abrams to inform her.
Brandy Abrams arrived at defendant’s home about 15 minutes later. She battered the screen door of defendant’s enclosed front porch with a baseball bat. She claimed that she did it in reaction to defendant’s wife, who was ranting, raving, spitting at her, and *118 threatening to “whoop my ass.” Abrams acknowledged that she threatened to assault defendant’s wife.
Defendant got his wife to step inside their home. He claimed that Abrams, bat in hand, next directed her threats against him. Defendant testified that a second person, Dennis Dinwiddie, then approached defendant’s porch door in a threatening manner. Abrams and Dinwiddie contested that testimony and claimed instead that Dinwiddie attempted to defuse the situation by taking Abrams by the arm and leading her back toward the Moores’ house.
It is agreed that at this point defendant remonstrated that he was “getting tired of this shit,” pulled out one of his three loaded handguns, and fired six times. Both Abrams and Dinwiddie were shot and injured, Abrams in her side, arm, and leg and Dinwiddie in his chest and posterior flank.
Defendant was charged with two counts of assault with intent to commit murder,[3] two counts of assault with intent to do great bodily harm less than murder,[4] two counts of felonious assault,[5] and one count of felony-firearm.[6] At trial, he asserted a theory of self-defense. At the close of trial, the court read CJI2d 7.16 to the jury. The portion of that instruction most pertinent to our analysis states:
(1) A person can use deadly force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed [he/she] needed to use deadly force in self-defense.
*119 (2) However, a person is never required to retreat if attacked in [his/her] own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack. [CJI2d 7.16.]
After one day’s deliberations, the jurors sent a note to the judge asking for clarification of what constituted defendant’s “home.” The court explained that an individual has no duty to retreat before using deadly force if in his or her own home or in the curtilage of that dwelling. The court further explained that “curtilage” generally means land or a yard adjoining a house, usually within an enclosure.
Two days later, the jurors notified the court that they could not reach a decision. The court reinstructed them on self-defense, explaining that people “can actually be in their home, their dwelling and not be subject to self-defense unless those circumstances them self [sic] justify that.” The court asked the jurors to continue deliberating and reread CJI2d 7.16, but it did not reinstruct them on the definition of “curtilage.” Defendant objected to the refusal to reinstruct on curtilage but did not object to the jury instructions in any other way or at any other point.
At oral argument in this Court, defense counsel contended that the trial court erred by giving CJI2d 7.16. Counsel asserted that the court should have instructed the jury that defendant had no duty to retreat because it was undisputed that he was in his home when attacked.
When this Court reviews jury instructions for reversible error, we consider the instructions as a whole.[7] In this case, although the jury was told that there is a *120 general duty to retreat, that instruction was immediately followed by the word "however.” This qualifier informed the jury that an exception to that general rule would follow. Then, the trial court instructed the jury that there is never a duty to retreat when attacked in one’s home.
The trial court’s instructions tracked CJI2d 7.16 almost verbatim. While “[t]rial judges should not hesitate to modify or disregard the [criminal jury instructions] when presented with a clearer or more accurate instruction,”[8] in this case defense counsel requested no alternative instruction. We cannot agree with defendant’s position, which would require trial courts to sua sponte depart from the criminal jury instructions under circumstances such as those presented here.
At trial, the prosecutor never argued that defendant was required to, or even should have, retreated from the altercation. In attempting to rebut defendant’s self-defense claim, the prosecutor argued only that defendant could not establish that he honestly and reasonably believed that he needed to use deadly force.
We conclude that defendant has not established that it was plain error for the court to instruct the jury using CJI2d 7.16. The instruction correctly told the jurors that, if defendant was in his home, he did not have to retreat. It also correctly informed them that defendant was entitled to use deadly force in self-defense only if it was necessary to do so.
It is apparent that the jury concluded that deadly force was not necessary and that the facts support that conclusion. An instruction that omitted the general duty to retreat and informed the jury only that defendant had no duty to retreat might have been clearer. *121 However, defense counsel did not ask the court to give such an instruction. And defendant was not prejudiced by this omission because the jury was, in fact, informed that a person attacked in his or her home has no duty to retreat. It was also instructed that a person’s porch is considered part of his or her home.
The dissent raises several points warranting a response. We wholeheartedly agree with the dissent that the castle doctrine and the right of personal self-defense are longstanding and precious rights that we must vigorously uphold. But this case jeopardizes neither. The factual dispute was whether defendant honestly and reasonably believed that he was entitled to use deadly force.[9] The court correctly instructed the jury that defendant had no duty to retreat if attacked in his home. Once the trial court clarified that the porch was part of defendant’s home, the jury instructions removed any remaining questions about whether defendant had a duty to retreat.
*122 We further agree with the dissent that had the jury not been instructed that a person has no duty to retreat when attacked in his or her home, reversal would have been required. Our decision in Pond v People[10] and 150 years of subsequent caselaw clearly mandate such a result.
But nothing in that caselaw required the judge in this case to sua sponte give the jury an instruction not to let the fact that defendant did not retreat into his house enter its deliberations.[11] People v Riddle addressed this question in a footnote in dictum.[12] But we do not agree that the footnote mandates reversal in the instant case.
As noted, the success of defendant’s self-defense claim did not hinge on whether he was required to retreat or stand his ground on his porch. Rather, it hinged on whether he honestly and reasonably believed that it was necessary to use deadly force while standing his ground.[13] After being properly informed that defendant had no duty to retreat if attacked in his home, the jury concluded that deadly force was not necessary. It recognized that the evidence showed that defendant *123 was unharmed and could have continued to stand his ground and remain unharmed without shooting the victims. The dissent makes the right arguments in the wrong case.
Finally, we do not agree with the dissent that it is “undisputed” that the jury considered whether defendant should have retreated rather than use deadly force.[14] The dissent asserts that, because the juxy asked for clarification of what constituted defendant’s “home,” it must have considered defendant’s failure to retreat. On. the contrary, the jury was likely trying to determine whether the duty to retreat applied to defendant. Hence, in a note to the judge, it asked for clarification about whether defendant was in his home when standing on bis porch. Once the judge clarified this point, the jury could determine that defendant had no duty to retreat and direct its attention, appropriately, to whether it was necessary for him to use deadly force. The note was sent before the judge clarified the meaning of “home.” Hence, the dissent has no basis to conclude that the note proves that after the judge responded, the jury believed defendant had a duty to retreat.
We reject defendant’s remaining claims of error for the reasons stated in the Court of Appeals’ opinion. We reject his claim that trial counsel was ineffective for failing to call Dinwiddie’s treating physician because defendant did not demonstrate that counsel’s actions were anything other than reasonable trial strategy.[15] Therefore, we affirm defendant’s convictions.
Young, C.J., and Cavanagh, Hathaway, and Zahra, JJ., concurred with MARILYN KELLY, J.

 People v Richardson, 488 Mich 1055 (2011).

 See MCL 768.21c; People v Riddle, 467 Mich 116, 134, 141 n 30; 649 NW2d 30 (2002).

 MCL 750.83.

 MCL 750.84.

 MCL 750.82.

 MCL 750.227b.

 People v Kelly, 423 Mich 261, 270-272; 378 NW2d 365 (1985).

 People v Dykhouse, 418 Mich 488, 494 n 1; 345 NW2d 150 (1984).

 The dissent correctly asserts that there was record support for defendant’s self-defense claim. By the same token, there was abundant evidence from which the jury could and did conclude that defendant’s use of deadly force was not necessary. For example, (1) defendant and his wife had had an acrimonious relationship with their neighbors and a number of altercations with them in the past, (2) immediately before he shot the victims, defendant exclaimed that he was “getting tired of this shit,” (3) a neighbor corroborated Dinwiddie’s testimony that Dinwiddie was leading Abrams away from defendant’s house when defendant shot them and testified that Dinwiddie and Abrams had reached the Moores’ property when defendant opened fire, (4) a medical report indicated that one bullet likely struck Dinwiddie in the rear flank, (5) it is uncontested that defendant’s wife was in no danger of physical harm when defendant opened fire, (6) there was no allegation that Dinwiddie or Abrams was assaulting defendant when he shot them, (7) neither Dinwiddie nor Abrams was carrying a firearm or knife, and (8) it is uncontested that defendant was unharmed when he opened fire. The jury had all the evidence it needed to conclude that defendánt emptied his gun into two defenseless and retreating victims.

 Pond v People, 8 Mich 150 (1860).

 It is this simple legal truth that renders untenable the dissent’s claim that such an instruction would have been “the only proper instruction” under the facts of this case. Post at 139.

 Riddle, 467 Mich at 141 n 30 (“There might he circumstances in which an instruction permitting the jury to consider a defendant’s failure to retreat would he improper; for instance, if the defendant was inside his dwelling when he was attacked or if the undisputed evidence established that he was suddenly and violently attacked.”). Because we concluded that the defendant in Riddle was not in his dwelling when he was attacked, this footnote was not necessary to Riddle’s holding and is obiter dictum.

 We see nothing in the record to support the dissent’s speculation that the jurors rejected defendant’s self-defense claim in the belief that he should have retreated. It bears repeating that the prosecutor never argued that defendant should have retreated.

 Post at 142 n 7.

 This issue was raised for the first time in this Court, so the Court of Appeals did not address it.