*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRIUS ZARRAN WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 345490
Wayne Circuit Court
LC No. 18-002494-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DARRIUS ZARRAN WILLIAMS,

Defendant-Appellee.

No. 346199
Wayne Circuit Court
LC No. 18-002494-01-FC

---

Before: SAWYER, P.J., and LETICA and REDFORD, JJ.

PER CURIAM.

In this consolidated appeal,[1] in Docket No. 345490, defendant appeals as of right his jury trial convictions of voluntary manslaughter, MCL 750.321, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 346199, the prosecution appeals as of right the trial court's decision to amend the judgment of sentence to reduce defendant's sentence for voluntary manslaughter from 16 to 40 years' imprisonment to 10 to 40 years' imprisonment. We

---

[1] *People v Williams*, unpublished order of the Court of Appeals, entered November 20, 2018 (Docket Nos. 345490 and 346199).

affirm defendant's convictions, but reverse the trial court's decision to amend defendant's sentence and remand for the trial court to reinstate the original sentence.

## I. BACKGROUND

This case arose out of defendant shooting and killing the victim, Orlando Ross, during the early morning hours of May 29, 2017. Defendant had a previous romantic relationship with the victim's sister, Dittra Ross, from which they shared a child. Further, defendant's father lived across the street from Dittra. Before the shooting occurred, defendant had engaged in an altercation with the victim's sister at defendant's home on Appoline Street. The altercation arose when Dittra discovered that defendant was having an intimate relationship with another woman, Shanika Hill. At some point during the fight between Dittra and defendant, the topic of Dittra's brothers was raised. Hill testified that Dittra told defendant that she was going to have her brothers kill him. Dittra stated that defendant brought up her brothers and she only told him that he must be afraid of them. Eventually, Dittra drove back to her house on Biltmore Street.

Shortly thereafter, defendant also left his home on Appoline Street to go to his father's home on Biltmore Street. Dittra contacted the victim and he said he was already on his way to her home. Dittra acknowledged that she told the victim that she had been in an altercation with defendant. When the victim arrived, he and his friend, Devari Morgan, got out of their vehicle and approached defendant on his father's lawn. Defendant shot the victim four times, killing him.

At trial, the prosecution presented evidence establishing that defendant drove to his father's house with the intent to kill one of Dittra's brothers and found the victim. Defendant elicited testimony that the victim approached defendant in a violent manner and may have been armed, and thus, defendant acted in self-defense.

After his convictions, defendant was originally sentenced to 16 to 40 years' imprisonment for his voluntary manslaughter conviction. Days later, the trial court called the parties back to amend defendant's sentence. The trial court stated that it believed the original sentence for manslaughter was too harsh and reduced it. The prosecution objected and later moved for the trial court to reinstate the original sentence, both of which the trial court denied. Defendant moved for the trial court to either reverse his convictions or to hold a *Ginther*[2] hearing on the basis of an error with the felony information and various allegations of ineffective assistance of counsel. The trial court also denied that motion. This appeal followed.

## II. FELONY INFORMATION

Defendant argues that his convictions must be reversed and the charges against him dismissed because the prosecution failed to sign the felony information. We disagree.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## A. STANDARD OF REVIEW

Defendant argues on appeal that the prosecution's failure to abide by statutory law and court rules in regards to the filing of the felony information divested the trial court of jurisdiction to hear the case, requiring reversal of all convictions and dismissal of charges. "To the extent our analysis involves the interpretation of court rules or questions of subject-matter jurisdiction . . . our review is de novo." *People v Clement*, 254 Mich App 387, 389-390; 657 NW2d 172 (2002). "Questions of statutory interpretation are reviewed de novo." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019) (quotation marks omitted).

## B. LAW AND ANALYSIS

We conclude that the prosecution's failure to sign the felony information is not a jurisdictional error requiring reversal of defendant's convictions.

In regards to its purpose, "[t]he information duly notifies a defendant of the charges instituted against the defendant and further eradicates double jeopardy issues in the event of a retrial." *People v Waclawski*, 286 Mich App 634, 706; 780 NW2d 321 (2009). Thus, "[a]n information . . . inform[s] the defendant of the nature of the offense charged and '[t]he time of the offense as near as may be.' " *People v Miller*, 326 Mich App 719, 732; 929 NW2d 821 (2019), quoting MCL 767.45(1)(a) and (b). An information, however, "shall not be filed against any person for a felony until such person has had a preliminary examination . . . , unless that person waives his statutory right to an examination." MCL 767.42(1). By statute, felony informations "shall be filed in the court having jurisdiction of the offense . . . by the prosecuting attorney of the county[.]" MCL 767.40. Further, a felony information must contain certain information, including "the substance of the accusation against the defendant and the name, statutory citation, and penalty of the offense allegedly committed." MCR 6.112(D). Under both statute and court rule, a prosecutor must sign the felony information. MCL 767.40 ("The information shall be subscribed by the prosecuting attorney or in his or her name by an assistant prosecuting attorney."); MCR 6.112(D) ("A prosecutor must sign the information.").

It is undisputed that a felony information is required to be signed by a prosecutor, and, in this case, it was not signed. The question before us, then, is whether that error requires reversal. The applicable law demonstrates that the prosecution's failure to sign the felony information does not necessitate reversal of defendant's convictions. The relevant court rule, MCR 6.112(G), provides the following discussion of when an error with an information might require reversal:

> **Harmless Error.** Absent a timely objection and a showing of prejudice, a court may not dismiss an information or reverse a conviction because of an untimely filing or because of an incorrectly cited statute or a variance between the information and proof regarding time, place, the manner in which the offense was committed, or other factual detail relating to the alleged offense.

Notably, while MCR 6.112(G) generally provides that a defendant must make "a showing of prejudice" before reversal is warranted on the basis of an error in the felony information, the court rule also provides a specific list of errors to which the rule applies. And, the failure of a prosecutor to sign the felony information does not appear on that list. *Id*. Defendant relies on the

lack of specific language to support his claim that the lack of a signature necessitates reversal. The statute on this topic, however, contains broader language:

No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, *nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment*, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. [MCL 767.76 (emphasis added).]

Although MCL 767.76 specifically references an indictment instead of an information, Michigan law regarding indictments is also applicable to informations. MCL 767.2 ("All provisions of the law applying to prosecutions upon indictments . . . shall, in the same manner and to the same extent as near as may be, be applied to informations and all prosecutions and proceedings thereon."); MCR 6.112(A) ("Except as otherwise provided in these rules or elsewhere, the law and rules that apply to informations and prosecutions on informations apply to indictments and prosecutions on indictments.").

In this case, the error in the information is that a prosecutor did not sign it, as required under MCR 6.112(D) and MCL 767.40. Defendant contends that this error is jurisdictional and requires reversal without proof of prejudice. But MCL 767.76 plainly states that any error "in form or substance" does not necessitate reversal. Thus, defendant's argument that the prosecutor's failure to sign the felony information divested the trial court of jurisdiction is without merit, because, otherwise, such a substantive error *would* necessitate reversal. See *People v Young (On Remand)*, 220 Mich App 420, 436; 559 NW2d 670 (1996) (holding that an order of the trial court must be reversed where the trial court did not have jurisdiction to hear the case). This conclusion is further supported by our Supreme Court's decision in *People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 868 (1998). There, the Court held that circuit courts have subject-matter jurisdiction over criminal cases in general. *Id*. at 458. Further, "[i]n personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate . . . before whom the defendant had been examined." *Id*. (quotation marks and citation omitted). Finally, and pertinently, the Court held that "[h]aving once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed." *Id*. at 458-459. We held similarly in *Waclawski*, 286 Mich App at 707, reasoning that even the abject failure to file an information at all does not establish a problem with jurisdiction.

Having determined that the prosecution's failure to sign the felony information did not cause an issue with the trial court's jurisdiction, we must next determine if the error was reversible for any other reason. According to MCR 6.112(H), a prosecutor is entitled to "amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." Such a request to amend the information can be made "before, during, or after trial . . . ." *Id*. MCL 767.76 contains similar language, providing that, "[t]he court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance[.]" While the prosecution undoubtedly had the right to request, and the trial court had the power to grant, permission for the prosecution to file an amended, signed felony information, it is undisputed that an amended information was not filed here. However, as

-4-

our Supreme Court held in *People v Watson*, 307 Mich 596, 601-602; 12 NW2d 476 (1943), the "generally accepted rule that under a statute vesting courts with power to amend indictments, any amendment not prejudicial to the rights of the accused may be allowed," also applies to situations where there was a failure to make an amendment. Stated differently, in a case where a defendant argues that a felony information should have been amended but was not, the defendant is still required to prove that the lack of the amendment caused prejudice to the defense. *Id*. Absent such proof of prejudice, reversal is not permitted. *Id*. at 602.

In *Waclawski*, 286 Mich App at 705-707, this Court considered whether a defendant was prejudiced where "an original felony information was not filed by the prosecutor in this case." The panel noted that, "[t]he dispositive question in determining whether a defendant was prejudiced by a defect in the information is whether the defendant knew the acts for which he or she was being tried so that he or she could adequately put forth a defense." *Id*. at 706. In that case, this Court was persuaded that no prejudice existed where there was a felony complaint and bind-over from the district court in the file and the defendant never alleged that he was unaware of those. *Id*. at 707. In light of those documents, and the fact that the defendant attended a hearing well before trial where the charges against him were read, this Court held that the defendant could not possibly have been surprised or his defense prejudiced. *Id*.

The same analysis from *Waclawski* applies here. The record in this case also contains a signed felony complaint and a bind-over from the district court, which lists the charges defendant faced. Indeed, in this case, there is also a signed felony warrant in the court file that lists the charges against defendant. Further, as in *Waclawski*, defendant was present in court when the charges against him were read, months before trial began. In this case, at the preliminary examination, defendant was present and represented by the same attorney who would eventually represent him at trial. During that preliminary examination, the prosecution specifically stated the charges defendant faced. Defendant does not contend that there was any error with the felony warrant, felony complaint, or bind-over, and does not dispute that he was present at the preliminary examination, and thus, aware of the charges against him. Consequently, as in *Waclawksi*, 286 Mich App at 706-707, defendant cannot possibly prove that he suffered prejudice from the error with the felony information. Therefore, the prosecution's failure to sign the felony information in this case does not warrant reversal. MCL 767.76; MCR 6.112(G); *Watson*, 307 Mich at 601-602; *Waclawksi*, 286 Mich App at 706-707.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant, in both the brief filed by appellate counsel and in his Standard 4 brief, argues that the trial court abused its discretion by denying his motion for a *Ginther* hearing.[3] We disagree.

---

[3] Defendant also argues, in his brief on appeal, that there were certain instances of ineffective assistance of counsel that are apparent on the record, and thus, warrant reversal without a *Ginther* hearing. However, defendant did not include this argument in his statement of the question presented, and consequently, it has been waived and we need not consider it. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Nevertheless, we have reviewed the record and

## A.  STANDARD OF REVIEW

A trial court's decision whether to grant an evidentiary hearing, such as a *Ginther* hearing, is reviewed for an abuse of discretion.  *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).  "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."  *Id*. at 217.

## B.  APPLICABLE LAW

A *Ginther* hearing is a method by which "[a] defendant who wishes to advance claims that depend on matters not of record can properly . . . seek at the trial court level an evidentiary hearing for the purpose of establishing his claims[.]"  *Ginther*, 390 Mich at 443.  However, the decision to deny a *Ginther* hearing is not an abuse of discretion where the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective[.]"  *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).  Thus, an analysis of whether development of a factual record to establish a claim of ineffective assistance of counsel initially requires a discussion of what must be proven to establish a claim of ineffective assistance.

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions."  *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016), citing US Const, Am VI; Const 1963, art 1, § 20.  "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise."  *Id*. at 190.  "[I]n order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted).  "When reviewing defense counsel's performance, the reviewing court must first objectively determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015) (quotation marks and citation omitted).  "Next, the defendant must show that trial counsel's

---

found those arguments to be without merit.  First, defendant argues that defense counsel was ineffective for failing to move the trial court to dismiss the charges against him or to reverse his convictions on the basis of the unsigned felony information.  For the reasons already discussed, that argument would have been meritless, and thus, cannot establish ineffective assistance of counsel.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").  Second, defendant argues that defense counsel should have moved for an entirely new jury panel when the trial court misread a portion of the charged crimes before jury selection began.  Our review of the record shows that defense counsel did seek that relief on the next day by moving for a mistrial.  Therefore, the record belies defendant's allegation of ineffective assistance of counsel on this ground, and thus, it is also without merit.  *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015).

deficient performance prejudiced his defense—in other words, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quotation marks omitted).

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant bears the burden of demonstrating both deficient performance and prejudice; the defendant also necessarily bears the burden of establishing the factual predicate for his claim." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and alterations omitted).

## C. ANALYSIS

The first issue that defendant alleges required a *Ginther* hearing was that defense counsel should have objected to the trial court reading one of the self-defense instructions. Specifically, defendant challenges the instruction that, absent certain exceptions, the jury was permitted to consider whether defendant had the opportunity to retreat when considering if he reasonably believed deadly force was necessary. Defendant suggests that defense counsel should have requested an instruction that defendant had no duty to retreat. We must first consider whether defense counsel's request would have been successful.

"A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Haynie*, 327 Mich App 555, 560; 934 NW2d 71 (2019) (quotation marks and citation omitted). Stated differently, "[o]ne of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include . . . any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

Defendant argues that, because there was no dispute that he was within the curtilage of his home and that he was the victim of a sudden attack, the trial court should have simply instructed the jury that he was not required to retreat. Defendant relies on our Supreme Court's decisions in *People v Richardson*, 490 Mich 115; 803 NW2d 302 (2011), and *People v Riddle*, 467 Mich 116; 649 NW2d 30 (2002). In a footnote in *Riddle*, 467 Mich at 141 n 30 (citation omitted), the Court discussed the certain circumstances where the jury instruction in question here might not apply:

> There might be circumstances in which an instruction permitting the jury to consider a defendant's failure to retreat would be improper; for instance, if the defendant was inside his dwelling when he was attacked or if the undisputed evidence established that he was suddenly and violently attacked. In such a case there would be no basis for an instruction allowing the defendant's failure to retreat to be considered in determining whether he acted in lawful self-defense.

In *Richardson*, 490 Mich at 122, the Court clarified that its footnote in *Riddle* was dictum, and thus, not binding. However, the Court also noted that "[a]n instruction that omitted the general duty to retreat and informed the jury only that defendant had no duty to retreat might have been clearer" where there was no factual dispute that the defendant was in their home. *Richardson*, 490 Mich at 120.

In both *Riddle* and *Richardson*, our Supreme Court was considering instances where the duty to retreat was not in dispute. In such cases, logically, it would be clearer to simply inform the jury that there was no duty to retreat. However, those are not the circumstances here. At trial, Dittra testified that defendant lived at his own residence on Appoline, not with his father at the home where the altercation took place. Thus, there remained a question of fact for the jury to decide regarding whether defendant had a duty to retreat before using deadly force. Similarly, there was also testimony that the victim was not approaching defendant in a "sudden and violent attack." Indeed, several witnesses testified that the victim did not have a gun or weapon, and Morgan testified that the victim was not even walking toward defendant. Therefore, there was also a question of fact regarding whether defendant was the subject of a sudden and violent attack.

Consequently, even if defense counsel had requested an instruction that defendant had no duty to retreat under *Richardson* and *Riddle*, the trial court would not have granted the request. The jury was permitted to decide if defendant was in his own home or the victim of a sudden and violent attack, and thus, not required to retreat. Because "[c]ounsel is not ineffective for failing to make a futile objection," this argument is without merit. *Thomas*, 260 Mich App at 457. More to the point, because there is no factual record that requires development in order to consider whether defense counsel was ineffective, the trial court did not abuse its discretion when it denied defendant's request for a *Ginther* hearing. *Ginther*, 390 Mich at 443; *Williams*, 275 Mich App at 200.

Defendant next argues that a *Ginther* hearing was necessary to consider whether defense counsel was ineffective for failing to request the jury instruction regarding self-defense and people acting in concert. The requested jury instruction provides the following:

> A defendant who is attacked by more than one person [or by one person and others helping and encouraging the attacker] has the right to act in self-defense against all of them. [However, before using deadly force against one of the attackers, the defendant must honestly and reasonably believe that (he / she) is in imminent danger of (death / great bodily harm / sexual assault) by that particular person.] [M Crim JI 7.24.]

Notably, because defendant used deadly force, the second sentence of the instruction would have been applicable. Therefore, if the trial court had given the instruction, the jury would have been told that, in order to be excused for his shooting of the victim, defendant had to "honestly and reasonable believe that [he was] in imminent danger of [death or great bodily harm] by" the victim. *Id*. Our review of the record demonstrates that the trial court gave an instruction that was substantially the same: "at the time he acted defendant must have honestly and reasonably believed that he was in danger of being killed or seriously injured."

To summarize, if the requested instruction would have been given, the jury would have been instructed that defendant had to have an honest and reasonable belief that he was being threatened with death or great bodily harm by the victim. Although the trial court did not give that instruction, it still instructed the jury that defendant had to have an honest and reasonable belief that the victim was going to kill him or cause him great bodily harm. Thus, in this case, the requested instruction would have been cumulative to the instructions actually read. Had defendant not used deadly force, and only the first sentence of M Crim JI 7.24 would have been read, then the instruction would have been appropriate. In that scenario, defendant's actions could have been excused by his fear of Morgan. However, because defendant used deadly force, his fear of death or great bodily harm had to be presented by the person who was shot—the victim.

Therefore, even without providing the challenged jury instruction, the trial court fulfilled its "role to clearly present the case to the jury and to instruct it on the applicable law." *Haynie*, 327 Mich App at 560 (quotation marks and citation omitted). Consequently, had defense counsel requested the additional instruction, as defendant asserts, that request would have been denied. *Id*. In light of the fact that "[c]ounsel is not ineffective for failing to make a futile objection," *Thomas*, 260 Mich App at 457, and no factual record would establish otherwise, the *Ginther* hearing was properly denied by the trial court, *Williams*, 275 Mich App at 200.

Next, defendant argues that a *Ginther* hearing was required to determine whether defense counsel was ineffective for failing to discover witnesses that heard and observed the fight between defendant and Dittra on Appoline Street. As discussed above, defendant is required to "set forth any additional facts that would require development of a record to determine if defense counsel was ineffective[.]" *Williams*, 275 Mich App at 200. Further, defendant is required to establish a factual predicate for the requirement to develop a factual record. *Cooper*, 309 Mich App at 80. In this case, defendant asserts that there were witnesses that could have testified about the fight that occurred on Appoline Street. He suggests that those witnesses would have corroborated the allegation that Dittra threatened to have her brothers kill defendant. However, defendant has not provided any of the names of the witnesses, where they lived, or what their testimony would have been. Thus, the trial court had no reason to grant the *Ginther* hearing, as the record contained no indication that the witnesses that defendant alleged that defense counsel should have called to testify even existed.[4] Consequently, the trial court did not abuse its discretion in denying the motion. *Id*.

Lastly, defendant argues that a *Ginther* hearing was required to determine why defense counsel recommended to defendant that he should not testify. "A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id*. This Court presumes that defense "counsel's advice to defendant not to testify on his own behalf . . . [is] sound trial strategy." *People v Tommolino*, 187 Mich App

---

[4] The trial court granted appellate counsel's request to appoint an investigator. Appellate counsel stated that after witness statements were obtained by the investigator, he could pursue a motion for remand in this Court. No motion for remand was filed.

14, 17; 466 NW2d 315 (1991). Further, this Court "will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 590; 831 NW2d 243 (2013).

During trial in this case, defense counsel informed the court that she had spoken with defendant about his decision whether to testify in his own defense. Defense counsel stated that she clearly explained that defendant's decision was his own. The trial court then placed defendant under oath defendant and engaged in a colloquy regarding his rights. Defendant stated on the record that it was his decision, after speaking with counsel, to remain silent and not testify. He stated that the decision was made of his own free will.

Now on appeal, defendant argues that he decided not testify on the basis of defense counsel's advice, and such advice amounted to ineffective assistance of counsel. On this record, defendant has not provided any proof that would overcome the strong presumption that defense counsel's advice was not sound trial strategy. *Tommolino*, 187 Mich App at 17. Indeed, defendant's argument is that he was the only person who could appropriately explain the situation and why he feared for his life. However, the record shows that Hill's testimony provided evidence that defendant felt his life was being threatened by the victim. Specifically, Hill said that the victim approached defendant in a furtive manner with his hand underneath his shirt. In other words, Hill testified that the victim could have been hiding a gun. In addition to that testimony, during cross-examination of Sergeant Kevin Wight, defense counsel elicited testimony that, during her police interview, Ramona Torrence, who also lived on Biltmore Street, told Sergeant Wight that she believed she saw Dittra take a gun from the victim's corpse and return it to her house across the street. Thus, even without defendant's testimony, there was significant evidence that defendant might have feared that the victim was going to kill or seriously injure him. In light of this, defense counsel's advice to defendant that he should not testify was sound trial strategy, despite it ultimately being unsuccessful. *Id*. Because defendant's argument regarding ineffective assistance of counsel was without merit and did not require the creation of a supplemental record, the trial court did not abuse its discretion in denying defendant's motion for a *Ginther* hearing. *Williams*, 275 Mich App at 200.

Lastly, in his Standard 4 brief, defendant contends that defense counsel was ineffective for failing to admit evidence of DTE records for the Appoline house. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 65; 931 NW2d 20 (2018) (cleaned up). "The failure to present certain evidence constitutes ineffective assistance of counsel only if it deprived defendant of a substantial defense." *People v Bosca*, 310 Mich App 1, 40; 871 NW2d 307 (2015). "A substantial defense is one that might have made a difference in the outcome of the trial." *Jackson*, 313 Mich App at 432 (quotation marks omitted).

Defendant's argument regarding the DTE records is without merit for two reasons. First, defendant has failed to establish the factual predicate for his claim. While he attaches the DTE records to his Standard 4 brief, he did not attach those same documents to his motion for a new trial or a *Ginther* hearing with the trial court. Defendant also attached a six-page, single-spaced, unsigned and unnotarized statement purporting to explain the DTE records—they are for the address referenced but in different names—to his Standard 4 brief on appeal, which also was not provided to the trial court in his motion for a new trial or *Ginther* hearing. Thus, the attachment

-10-

of those records is an impermissible attempt to expand the record on appeal, considering our review is limited to mistakes apparent on the record. *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014) ("[A] party may not expand the record on appeal[.]"). Because we are not permitted to consider those documents, defendant has failed to establish the factual predicate for his claim of ineffective assistance of counsel, which he was required to do. *Cooper*, 309 Mich App at 80.

Defendant also argues, however, that we should reverse the trial court's decision denying his request for a *Ginther* hearing, at which point, presumably, he would have provided the trial court with the DTE records. Thus, despite relying on evidence outside of the record, we have considered the merits of defendant's argument and reject it nonetheless. The DTE records show that electricity service for the Appoline house was restored on May 23, 2017, although in the name of DeWayne Young. In defendant's attached statement, he asserts that the utility was ordered in Young's name because defendant was a "fugitive." The DTE records also show that defendant committed theft of DTE electricity and gas on several occasions in 2016. In his statement, defendant explains that he did so because the electricity and gas had been shut off after DTE discovered that Dominique Vance, in whose name the DTE bill was in at that time, had a delinquent bill at another address. In addition to the information about electric service, the DTE records also suggest that the house did not have gas service for heat restored at that time. Indeed, the bills showed that gas service was last paid in January 2017.

Defendant contends that a jury would have considered DTE records as determinative proof that he did not live at the Appoline house, but actually lived with his father. Consequently, in failing to obtain and admit those records, defense counsel excluded proof of an important part of the self-defense theory—that defendant was within the curtilage of his home at the time of the shooting and did not have to retreat. However, the evidence could also be interpreted to suggest the opposite. After all, defendant admits that the electricity service for the Appoline house was returned on May 23, 2017, five days before the shooting occurred. While there was no gas service to the house at the time, it was also in late May, a time where heating might not be necessary. Moreover, there are electric heaters that may be plugged into outlets. Thus, a jury might have logically reasoned that the returned electricity service was actually evidence that defendant had moved out of his father's home and back into the Appoline home. By admitting that evidence, defense counsel would have only potentially obtained a benefit, while risking a detriment to the case. Further, the DTE records also show that defendant stole electricity and gas from DTE on two occasions, which defendant confirms in his statement. Thus, in order to obtain the dubious benefit of the records, defense counsel also would have been forced to submit evidence to the jury that defendant committed a crime. Consequently, it is highly likely that defense counsel's decision not to admit the DTE records was a matter of valid trial strategy. *Muhammad*, 326 Mich App at 65 ("[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy.").

In sum, defendant's argument regarding the DTE records is without merit both because it is not supported by record evidence and cannot overcome the strong presumption that the evidence was not admitted because of objectively reasonable trial strategy. Moreover, the record demonstrates no reason for the trial court to grant a *Ginther* hearing where defendant has not provided "additional facts that would require development of a record to determine if defense counsel was ineffective[.]" *Williams*, 275 Mich App at 200. The records themselves clearly

-11-

establish the trial strategy behind refusing to admit them, belying any necessity of a *Ginther* hearing. *Id.*

## IV. CHARACTER EVIDENCE

Defendant argues that the trial court abused its discretion by barring him from eliciting testimony about the victim's prior conviction of unarmed robbery.[5] We disagree.

## A. STANDARD OF REVIEW

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). "[W]hen such preliminary questions of law are at issue, it must be borne in mind that it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Henry*, 315 Mich App 130, 143; 889 NW2d 1 (2016) (quotation marks omitted).

## B. APPLICABLE LAW AND ANALYSIS

The trial court did not abuse its discretion in denying defendant's request to question Morgan regarding the victim's prior criminal conviction.

The general rule is that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" MRE 404(a). This rule, however, is subject to certain exceptions. Particularly relevant to this case is MRE 404(a)(2), which in pertinent part provides that, "[w]hen self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused" is admissible. A separate rule, MRE 405, deals with permissible ways to introduce evidence of a person's character. Under MRE 405(a), "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." However, under MRE 405(b), evidence of "of specific instances of [a] person's conduct," is only admissible when the "character or a trait of character of [that] person is an essential element of a charge, claim, or defense[.]"

---

[5] Defendant also appears to argue that he was not permitted to ask about the victim's general reputation for violence. However, our review of the record shows that defendant was permitted to ask that question. It was when defendant asked the question, and the response was that the victim was a peaceful person and did not generally carry a gun, that defendant sought to introduce testimony of the victim's conviction. Thus, to the extent defendant has raised this argument on appeal, the record belies it. *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017) (cleaned up) ("As the appellant in this case, defendant bears the burden of providing this Court with a record to verify the factual basis of any argument upon which reversal might be predicated.").

This Court in *People v Edwards*, 328 Mich App 29, 35-37; 935 NW2d 419 (2019), recently provided an in-depth explanation regarding the interplay of those rules of evidence in cases involving self-defense in homicide cases:

> In *People v Harris*, 458 Mich 310, 314-317; 583 NW2d 680 (1998), a homicide case, the Michigan Supreme Court held that evidence of the violent character of the decedent in the form of reputation evidence is admissible, even if unknown to the defendant, to show the decedent's probable aggression and act of violence at the time the decedent was killed. Our Supreme Court explained, however, that reputation evidence could not be used to prove the defendant's state of mind unless the defendant knew about the decedent's character at the time:

> > [W]here a defendant charged with murder asserts that he killed in self-defense, his state of mind at the time of the act is material because it is an important element in determining his justification for his belief in an impending attack by the deceased. The reputation of the deceased for a violent or turbulent disposition is a circumstance that would cause such a belief. However, unlike evidence tending to show that the victim was the aggressor, the deceased's violent reputation must be known to the defendant if he is to use it to show that he acted in self-defense. Reputation in the neighborhood where both live is sufficient with nothing more. The strength of the deceased as well as his habitual carrying of weapons or his possession of them at the time of the affray, if known to the defendant, should be considered as properly affecting his apprehensions. The purpose of this evidence is to show the defendant's state of mind; therefore, it is obvious that the victim's character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is irrelevant. [*Id*. at 316-317 (quotation marks and citations omitted).]

> Our Supreme Court also distinguished character evidence used in relation to an ultimate issue in a case from character evidence used as circumstantial evidence of an act. *Id*. at 317. The Supreme Court explained that in cases "[w]here character is 'in issue,' the character of a person may be an element of the . . . defense." *Id*. at 318. In such cases, "[MRE] 405 allows specific instances of violence to be admitted . . . ." *Id*. at 319. The *Harris* Court cited this Court's decision in *People v Cooper*, 73 Mich App 660; 252 NW2d 564 (1977), for the well-settled law that specific acts of aggression by the decedent are admissible to establish a defendant's reasonable apprehension of harm.

> In cases where the decedent's character was not an essential element and "in issue," our Supreme Court clarified that the general rule applied, and the decedent's character "may not be shown by specific instances of conduct . . . ." *Harris*, 458 Mich at 319. Our Supreme Court explained:

As a general rule, the character of the victim may not be shown by specific instances of conduct unless those instances are independently admissible to show some matter apart from character as circumstantial evidence of the conduct of the victim on a particular occasion.

"[W]hen character is not an essential element, it may be shown only by reputation or opinion evidence . . . . Hence, construed literally, Rule 405 does not permit a defendant to use specific instances to show that the victim was the aggressor since the aggressive character of the victim is not an essential element of the defense of self-defense since the aggressive character of the victim is introduced as circumstantial evidence to show that the victim committed the first or primary act of aggression against the defendant, which is to say that the defense of self-defense in this situation makes an act of the victim, rather than a trait of the victim's character, the material issue." [*Id*. (citation omitted; alteration in original).]

Therefore, the rule enunciated in *Harris* is twofold. First, evidence of a victim's aggressive character is admissible in the form of reputation evidence, even if the defendant does not have knowledge of the decedent's character, to show that the decedent was the probable aggressor. With that said, evidence of the decedent's reputation that is not known to the defendant is inadmissible to prove an essential element of self-defense, e.g., a reasonable apprehension of harm. Second, evidence of the decedent's specific acts of violence is admissible only to prove an essential element of self-defense, such as a reasonable apprehension of harm.

In sum, evidence of the victim's general character for aggression is always admissible to show that the victim was the likely aggressor in the altercation. MRE 404(a)(2); MRE 405(a); *Harris*, 458 Mich at 316-317. However, specific acts of the victim are only admissible as evidence of a defendant's state of mind during the altercation—whether the defendant honestly and reasonably believed his life was in danger or he was about to suffer great bodily harm. *Id*. at 319; MRE 405(b). Thus, in order for a specific act of the victim to be relevant to a defendant's state of mind during the altercation, the specific act must be known by the defendant at the time of the altercation. *Id*.; *Harris*, 458 Mich at 316-319.

In this case, defendant sought to question Morgan about the victim's prior conviction of unarmed robbery. This was a specific instance of conduct by the victim. Thus, it was only admissible under MRE 405(b), *Harris*, and *Edwards* if the specific act of violence was known by defendant. There was no allegation during trial or now on appeal that defendant knew of the victim's unarmed robbery conviction at the time of the altercation. Therefore, it was not admissible under MRE 405(b), and the trial court did not abuse its discretion by prohibiting the questions.

## V. SENTENCING

The prosecution argues that the trial court was not permitted to amend defendant's validly entered sentence. We agree.

### A. STANDARD OF REVIEW

The question of whether a trial court has authority to amend a sentence is an issue of law, relying on interpretation of court rules and statutes, which we review de novo. *People v Comer*, 500 Mich 278, 287, 292-293; 901 NW2d 553 (2017).

### B. APPLICABLE LAW AND ANALYSIS

"Once the original and valid sentence . . . was imposed the court did not have the power to release the defendant, nor could the court order that the" sentence be modified. *People v Barfield*, 411 Mich 700, 702; 311 NW2d 724 (1981). Stated differently, "[t]rial courts ordinarily lack the authority to set aside a valid sentence." *Comer*, 500 Mich at 295 n 40. "The circuit judge had no power at that time to vacate the sentences, because the authority over the prisoners had passed out of his hands by his own order." *Barfield*, 411 Mich at 703 (quotation marks omitted). In *Barfield*, 411 Mich at 703, the Court referred to a trial court's attempt to amend a validly imposed sentence without a legal reason to do so as a "nullity." The Court also explained that, "a trial court is without authority to set aside a valid sentence and impose a new one, because to do so would infringe upon the exclusive power of the governor under the Constitution to commute sentence." *People v Whalen*, 412 Mich 166, 169; 312 NW2d 638 (1981) (quotation marks omitted). Despite that being the general rule, the Court in *Whalen* provided a list of circumstances where a trial court would be permitted to amend a sentence:

> A court's authority to resentence depends, therefore, on whether the previously imposed sentence is invalid. Clearly a sentence beyond statutory limits is invalid. A sentence within statutory limits may also be invalid on a number of grounds. It is invalid if the sentencing court relies on constitutionally impermissible considerations, such as the defendant's constitutionally infirm prior convictions, or improperly assumes a defendant's guilt of a charge which has not yet come to trial, or the court fails to exercise its discretion because it is laboring under a misconception of the law, or conforms the sentence to a local sentencing policy rather than imposing an individualized sentence. More recently, this Court has held invalid sentences which do not comply with essential procedural requirements such as failure to utilize a "reasonably updated" presentence report or to provide the defendant and his counsel with the opportunity to address the court before sentence is imposed. [*Id*. at 169-170 (citations omitted).]

While the parties discuss MCR 6.429(A), this Court has been clear that "[n]either before nor after the enactment of MCR 6.429(A) has the trial court possessed authority to alter inaugurated sentences on the basis of post hoc discretionary sentencing criteria." *People v Wybrecht*, 222 Mich App 160, 168; 564 NW2d 903 (1997). In other words, a "trial court's reevaluation of its own discretionary sentencing decision violated the axiomatic principle that the trial court cannot invalidate its sentences by simply changing its mind." *Id*. at 168-169.

In this case, the trial court stated that it was amending the original sentence because it believed that it was too harsh under the circumstances. The trial court noted that its original sentence had been made at a time when the court felt rushed. The trial court's primary reasoning was that it had merely changed its mind about the sentence originally given. Notably, that is not one of the listed grounds in *Whalen* for an appropriate reason to change a sentence and violates the rule from *Wybrecht*.

On appeal, defendant argues that the trial court was permitted to amend the sentence because it was made on the basis of inaccurate information. Specifically, defendant contends that, for the original sentence, the trial court relied on the fact that defendant went to his father's house on Biltmore Street looking for a fight and with the intent to kill the victim. During resentencing, defendant alleges, the trial court properly considered that defendant was simply going to his own home and reacted when confronted by the victim.

Defendant's argument lacks merit for two reasons. First, the trial court never cited such reasons for its decision to change the sentence. Instead, the trial court relied on a change of heart, which was not permitted. *Wybrecht*, 222 Mich App at 169-170. Second, while defendant was entitled to the right to be sentenced on the basis of accurate information, *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006), defendant incorrectly presumes that his version of events was accurate and the prosecution's version of events was inaccurate. The jury found defendant guilty of voluntary manslaughter, which allows for the finding that defendant did go to Biltmore Street looking for a fight, and was not at his own home. Therefore, there is nothing in the record to suggest that the information was inaccurate. Consequently, defendant's argument is without merit. *Id*.; *Wybrecht*, 222 Mich App at 169-170.

Lastly, defendant argues that the trial court was permitted to amend its sentence on the basis of its own oversight or omission. Specifically, defendant argues that the trial court was unaware that his conviction for felony-firearm as a second offense would require a five-year prison term to be served consecutively to the sentence it imposed for his voluntary manslaughter conviction. Defendant's argument fails because, during the first sentencing hearing, the trial court was specifically informed that defendant's felony-firearm sentence would be for five years' imprisonment and served consecutively to the sentence imposed for the voluntary manslaughter conviction. Even upon learning of that information, the trial court reiterated that defendant's voluntary manslaughter conviction would be 16 to 40 years' imprisonment. Thus, the record does not support defendant's argument that the trial court overlooked that the consecutive sentencing, and thus, defendant's argument in that regard is without merit. *Everett*, 318 Mich App at 523.

## VI. CONCLUSION

Defendant's convictions are affirmed, but we reverse the trial court's decision to amend his sentence and remand with instructions to reinstate the original judgment of sentence. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ James Robert Redford

-16-